**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD ALLEN HAMMONDS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:11-1666** |
| v. | : | **(MANNION, D.J.)** |
| | | **(SCHWAB, M.J.)** |
| **JEROME WALSH,** *et. al.***,** | : | |
| **Defendants** | : | |

# MEMORANDUM[1]

Richard Allen Hammonds, the plaintiff in this matter, is an inmate at the Pennsylvania State Correctional Institution at Frackville ("SCI-Frackville"). On January 26, 2011, Mr. Hammonds alleges that various corrections officers taunted him while he was in his cell in another SCI located in Dallas, Pennsylvania ("SCI-Dallas"). One of those officers then opened his cell door, Mr. Hammonds sprinted out and attacked a corrections officer. He was eventually restrained through the use of handcuffs and a spit mask. While he was being subdued and just after he was brought under control, he claims he was severely beaten by several of the officers in the receiving area of his cell block. He further alleges that various defendants destroyed video tapes of this incident, but has not supplied any evidence that they existed or were in the

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

care, custody, or control of the individual defendants. The plaintiff moved for spoliation sanctions and Judge Schwab denied that motion. The plaintiff now appeals that order.

After the altercation, Mr. Hammonds further claims that Lieutenant Victor Mirarchi ordered various corrections officers to poison him while he was at SCI-Frackville. These officers placed a substance in his food that he has not, to date, identified. However, this alleged poisoning caused him severe pain in his abdomen and other parts of his body. The plaintiff has not produced sufficient evidence to link Lieutenant Mirarchi to this supposed poisoning. Lieutenant Mirarchi has moved for summary judgement and Judge Schwab issued a report recommending that motion be granted.

For the reasons discussed below, the court will **DENY** the plaintiff's appeal of Judge Schwab's order on the spoliation sanctions, **ADOPT IN FULL** her report and recommendation on the issue of summary judgment, and **GRANT** Lieutenant Mirarchi's motion for summary judgment.

I. **BACKGROUND**

Presently before the court are a report and recommendation from Judge Schwab, (Doc. 133), and the plaintiff's appeal of Judge Schwab's order denying his motion for sanctions. (Doc. 121, 132, 134). Judge Schwab's report recommends that defendant Victor Mirarchi's motion for summary

judgement, (Doc. 125), be granted. The plaintiff failed to filed a brief in opposition to Defendant Mirarchi's motion and did not file an objection to the report and recommendations. As noted above and for the reasons discussed below, the motion for summary judgement will be granted and the plaintiff's appeal will be denied.

## II.   FACTUAL BACKGROUND

This lawsuit stems from an ongoing conflict between the plaintiff and various staff members at SCI-Dallas and later at SCI-Frackville. On January 26, 2011, several of the defendants in this matter, corrections officers Headman, Harrison, and Sargent Buck,[2] allegedly withheld the plaintiff's breakfast and lunch. Around noon that same day, the plaintiff claims Sgt. Buck then opened his cell door. The plaintiff alleges he tried to close it, but was unable to do so. Frustrated by the withholding of food and various other provocations during the morning, the plaintiff then rushed from his cell and attacked Defendant Headman. Defendant Harrison saw this happen and rushed to assist. (Doc. 16, p. 3).

The officers were able to subdue the plaintiff and forced him to the ground. The plaintiff claims that Harrison punched him in the head several

---

[2]The docket and filings do not indicate the first name of these defendants.

times while Headman placed him in handcuffs. Sgt. Buck saw this happen and noticed that the plaintiff was bleeding. He placed a spit mask on the plaintiff's face, but the plaintiff claims he did so in a forceful manner that choked him. Officers then restrained him further with additional arm and leg shackles. He was then moved to the Restricted Housing Unit's "dayroom" where he claims he was kicked, punched, spit on, and taunted for several minutes. (Doc. 16, p. 4).

After he was taken from the dayroom, officers escorted him down to the medical department to be examined. As this was happening, the plaintiff alleges that a corrections officer and former defendant, who was dismissed from this matter two years ago, video taped him with a handheld camera while he was escorted to the medical area. The doctor then took pictures of his injuries. He was then placed in a psychiatric observation cell (POC) for a period of time. (Doc. 16, p. 4). The plaintiff has been provided with four videos from the incident, including the video from the handheld camera noted above, but no video from the dayroom has been produced. (Doc. 122, 123, 124). The plaintiff now avers that the dayroom where he was taken after being restrained was or should have been recorded at all times per a purported Pennsylvania Department of Corrections (DOC) policy. He alleges that Sgt. Buck was required to maintain those video tapes and ensure they were preserved as evidence of this incident. In support, he has provided the court

with a hand-written copy of a supposed DOC policy entitled DC-ADM 6.5.1 §(f). The plaintiff has also submitted an alleged copy of a Pennsylvania DOC policy requiring that photographs be taken of a prisoner after a use of force incident. (Doc. 113, Exh. A).

In response, the defendants have provided the court with department of corrections materials noting that when such incidents occur, the facilities security office compiles a report and preserves the relevant evidence for seven years. (Doc. 116, Att. 1). These policies, however, do not mention the dayroom specifically. The defendants further provided the court with a declaration from Keith Starynski, a lieutenant with in the SCI-Dallas security office. This declaration states that the RHU dayroom camera is only operating during inmate intake into the RHU. Therefore, it was not recording when the plaintiff was taken into that room. (Doc. 111, Att. 1). He also states that the video taken inside the plaintiff's POC was purged from the system approximately 28-32 days after the incident as per operating procedures. (Id.).

Subsequently, the plaintiff was moved to SCI-Frackville in February 2011. During his 21 months there, he alleges that Lt. Mirarchi ordered Defendants Wiedow, Kalce, and Sgt. Long to poison his food. (Doc. 16, p. 5). The plaintiff requested a kosher meal while he was at Frackville, but claims prison officials never gave him one. He also stated that his tray would be on the top of the food cart, while the others would be stacked in the cart itself.

5

(Doc. 127, Att. 1). The plaintiff also alleges that he spoke with another corrections officer who told him that Lt. Mirarchi had it out for him. (Id.). The plaintiff has also submitted three affidavits from fellow prisoners. In sum, one alleges he has experienced the symptoms stemming from food poisoning, (Doc. 127, Att. 4, p. 2), while two others note general circumstances where they saw Lt. Mirarchi warn the defendant not to act like he did at SCI-Dallas. (Id., p. 3-4).

### III. PROCEDURAL BACKGROUND

The plaintiff filed his supplemental amended complaint in November 2011 alleging various causes of action, including the claims for excessive force and food poisoning discussed above. (Doc. 16). He filed a motion for spoilation sanctions and brief in support regarding the dayroom and POC videos on September 25, 2013. (Doc. 121, 122). The defendants filed a joint brief in opposition on October 15, 2013, (Doc. 123), and the plaintiff filed his reply brief shortly thereafter, (Doc. 124). Judge Schwab issued an order denying the plaintiff's motion on May 5, 2014. (Doc. 132). The plaintiff timely filed an appeal of that order on May 16, 2014. (Doc. 134).

Defendant Mirarchi individually filed a motion for summary judgment, statement of material facts, and brief in support on November 18, 2013. (Doc. 125, 126, 127). That same day Judge Schwab ordered the plaintiff to file a

brief in opposition, counter-statement of facts, and any supporting evidence by December 12, 2013. (Doc. 129). To date, the plaintiff has not filed those documents or anything else with respect to the motion for summary judgment. On May 5, 2014, Judge Schwab issued a report recommending that Defendant Mirarchi's motion for summary judgement be granted. (Doc. 133). The plaintiff has not filed an objection. The issues are now all ripe for the court's ruling.

## IV. STANDARD OF REVIEW

### A. The Appeal Denying the Motion for Sanctions

A district judge may modify or set aside a non-dispositive order, such as an order denying a motion for spoliation sanctions, if it is clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a); Local Rule 72.2. In considering the defendant's appeal, the court keeps in mind that "[a] Magistrate Judge is accorded wide discretion in addressing non-dispositive motions." *Walsh v. Krantz*, 2009 WL 321585 (M.D. Pa., Feb. 9, 2009) (citations omitted), *aff'd by* 386 Fed. App'x 334 (3d Cir. 2010). Moreover, a court may not reverse, modify, or vacate a magistrate judge's order addressing a non-dispositive matter unless that order is "clearly erroneous or contrary to law." 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a)*; Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 145 n.27 (3d Cir. 2009); *Cipollone v. Liggett Group, Inc.*, 785

F.2d 1108, 1113 (3d Cir. 1986). "[A Magistrate Judge's] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 92 (3d Cir. 1992). The burden in demonstrating the order is clearly erroneous or contrary to law rests with the party filing an appeal. *Kounelis v. Sherrer,* 529 F.Supp.2d 503, 518 (D.N.J. 2008)(*citing Marks v. Struble,* 347 F.Supp.2d 136, 149 (D.N.J.2004)).

The "clearly erroneous" standard is highly deferential. The issue is not whether another judge or court may have decided the case differently, rather the standard is essentially plausibility. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (noting that if there sufficient evidence that makes the presiding judge's ruling plausible, it should not be disturbed even if the court would have decided the issue differently). The question for this court is whether there is evidence that makes Judge Schwab's order "plausible in light of the record viewed in its entirety," not whether another judge may have reached a different or opposite conclusion. *Id.* at 573. Moreover, a determination by a magistrate judge is contrary to law if the magistrate judge misinterpreted or misapplied the applicable law. *Gunter v. Ridgewood Energy Corp.,* 32 F.Supp.2d 162, 164 (D.N.J. 1998).

B. <u>The Report and Recommendations</u>

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper*. Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (*citing United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also *Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (*citing Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

**V.     DISCUSSION**

    A.     <u>The Appeal Denying the Motion for Sanctions</u>

The plaintiff challenges Judge Schwab's order in two main respects.[3] First, he claims that she improperly credited the declaration of Keith Starynski that the prison does not record the dayroom except for when inmate intake is occurring. Second, he claims that his affidavit expressing his interpretation of a Pennsylvania DOC policy warrants conducting an evidentiary hearing on the matter. The court disagrees and will affirm Judge Schwab's order.

There are four elements the plaintiff must show in order to demonstrate the defendants are culpable for spoliation: (1) the evidence was in the defendants' control; (2) the evidence is relevant to the claims at issue; (3) there was actual suppression or withholding of that relevant evidence; and (4) the duty to preserve evidence in light of reasonably foreseeable litigation. *Bull v. United Parcel Service, Inc.*, 665 F.3d 68, 73-74 (3d Cir. 2012). As Judge Schwab correctly noted, the plaintiff only alleges that the Defendant Buck was

---

[3] The plaintiff does not appeal Judge Schwab's determination that the destruction of the video of the POC did not warrant spoliation sanctions. As her order accurately notes, the plaintiff has failed to demonstrate that any of the remaining defendant's had control over the video; that any culpable state of mind existed given the policy of erasing videos after 28-32 days; that it was not reasonably foreseeable that this would be evidence given there is no allegation that any of the conduct at issue occurred in the POC; or that he is in any way prejudiced given he has numerous photos of his injuries. (Doc. 132, p. 10-11). Regardless, her ruling was correct and would not be disturbed even if he did appeal that portion of her decision.

ever responsible for maintaining videotapes from the dayroom. Therefore, he has failed to carry that burden with regard to demonstrating Defendants Headman and Harrison ever had control of the alleged video tape.

Judge Schwab also correctly credited SCI-Dallas security officer Keith Starynski's statement that the dayroom cameras only record during prison intake. (Doc. 132, p. 8). To rebut this evidence, the plaintiff points the court to a hand-written page purportedly showing DC-ADM 6.5.1 §(f) that requires the dayroom to be recorded at all times. (Doc. 124, Exh. F). As this was a factual determination, the court finds that Judge Schwab properly credited the declaration given it came from a person with knowledge of SCI-Dallas's policies and procedures. Further, the plaintiff's hand-written copy of DC-ADM 6.5.1 §(f), assuming it is even accurate, supports officer Starynski's declaration because it states the officer in charge must ensure "that each *reception* to the security Level 5 Housing Unit in their area of responsibility is videotaped." (Id. (emphasis added)). Judge Schwab properly noted the hand-written evidence deserved little or no weight because it is "unclear whether is applies to SCI Dallas, the RHU Dayroom, and this case in general. Further, it is uncertain whether DC-ADM 6.5.1 §(f) even exists." (Doc. 132). As there is no allegation that receptions or intakes were ongoing at the time of the alleged incident, her finding that the video cameras were not operating is well supported. Given the plaintiff has failed to demonstrate the evidence ever

existed or that the defendants had a duty keep the cameras recording during this incident, it could not be suppressed or withheld.

Finally, although it is not clear whether the plaintiff must show that the defendants' conduct was merely intentional or was fueled by a culpable state of mind, *Swindell Dressler Intern. Co. v. Travelers Cas. and Sur. Co., 827 F.Supp.2d 498, 506-7 (W.D.Pa. 2011)*, he has not demonstrated any such conduct. Four videos of the incident were turned over to the plaintiff. There is no video from the dayroom and all other videos were purged per DOC policy 28-32 days later. (Doc. 111, Att. 1). He further makes no allegation that any incident occurred in the POC room. For those reasons, Judge Schwab's order denying spoliation sanctions is affirmed.

### B.    The Report and Recommendations

As Judge Schwab throughly discussed in her report, the sole evidence linking Defendant Mirarchi to the alleged food poisoning is the hearsay statement of another corrections officer that Defendant Mirarchi was out to get the plaintiff. (Doc. 127, Att. 1). The court agrees with Judge Schwab's determination that this hearsay statement would be inadmissible at trial and should not be considered in determining a motion for summary judgment. *See Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009)*("Hearsay statements that would be inadmissible at trial may not be considered for

purposes of summary judgment."). Even if such a statement was admissible, it is insufficient evidence to demonstrate that he created a policy, custom, or practice that caused the plaintiff to be poisoned, that he participated or directed the poisoning, or that he had such knowledge and allowed the poisoning to continue. *A.M. ex rel J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004). As there is no evidence to demonstrate supervisory liability, Defendant Mirarchi is entitled to summary judgment.

## VI.  CONCLUSION

For the reasons discussed above, the plaintiff's appeal is **DENIED**, Judge Schwab's report and recommendation is **ADOPTED IN FULL**, and Defendant Mirarchi's motion for summary judgment is **GRANTED**. Given all the dispositive motions have been ruled on, the case shall be set for trial before the undersigned. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 10, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-1666-01.wpd